JULIA ANN ALLISON v. JOHN T. MOORE.

[Abstract Kentucky Law Reporter, Vol. 3—326.]

**Fraudulent Conveyance.**
  Where a conveyance of real estate is made by one to her half-sister after an attorney has caused the deed to be read and he has explained to the grantor just what interest she is conveying, and no undue influence is shown to procure the conveyance, the deed will not be cancelled, in the absence of proof showing that fraudulent and false representations were made to the grantor by the grantee.

**Rejection of Deposition of Party.**
  Under the provisions of Buckner & Bullitt's Civ. Code (1876), § 606, subsec. 4, no person may testify for himself in chief after taking other testimony in chief, and where the appellee, before she gave her deposition, had taken that of another in chief, the withdrawal of said first deposition will not render her own deposition admissible.

APPEAL FROM LOUISVILLE CHANCERY COURT.

October 6, 1881.

OPINION BY JUDGE PRYOR:

The ground of recovery in this case is based on the alleged fraudulent representations of Mrs. Emma Moore, made to her sister (the appellant) in regard to her interest in the estate of Mrs. Burge, and the concealment from her that she had an interest in the property she was about to convey. It is also alleged that her mind and health were impaired to such an extent as to enable those to succeed who desired to practice such a fraud upon her.

Mrs. Burge died, leaving what was supposed to be her last will and testament, by which she attempted to dispose of her whole estate. She devised a house and lot on Main street, in Louisville, Kentucky, to her sister, Mrs. Emma Moore, and the balance of her estate to her husband, R. Burge. At the time she executed the paper she was a married woman, and left her husband surviving her. The real property devised was her general estate, and having no power to make a will, no title passed to the devisees as such. Mrs. Burge left surviving her the appellee, Mrs. Moore, a sister of the whole blood, and the children of a

deceased sister of the whole blood, and the appellant, a half-sister.

Those of the whole blood, under our statute, being entitled to twice as much as those of the half blood, Mrs. Moore and the children of the deceased sister were entitled to two-fifths each, and Mrs. Allison, the appellant, to one-fifth. The appellant conveyed her interest to her sister, Mrs. Moore, in consideration of love and affection, and in order to carry out the wishes of her half-sister, Mary R. Burge, deceased. This conveyance is now sought to be cancelled for the reasons already stated. The appellant was in her sixty-ninth year at the time she made the conveyance, and testifies that her sister concealed from her the fact that she had an interest in the property, and the further fact that the will of Mrs. Burge was a nullity; that her sister stated she wanted her to sign the conveyance as a matter of form, because some lawyer had given an opinion to the effect that the will was void. She says that she (the witness) supposed the will was valid, and believed that her half-sister had the right to do as she pleased with the property; that the matter was never explained to her by any one, and she did not know that she owned an interest of one-fifth, or was conveying that interest to Mrs. Moore. This is the substance of the testimony of the appellant, with the additional statement that her visit to Louisville was at the invitation of her sister, with the suggestion in the letter that her sister wanted to see her in reference to a matter that concerned her (Mrs. Moore). The appellant at the time lived in Indianapolis. She states that no conversation was had between her and Mrs. Moore in regard to the property, but that it was at her sister's instance that the deed was made.

The deposition of Mrs. Moore was taken, but upon exceptions filed was excluded, and we think properly. Buckner & Bullitt's Civ. Code (1876), § 606, Subsec. 4, provides that no person shall testify for himself in chief, in either an ordinary or equitable action, after taking other testimony in chief. In this case the appellee, before she gave her deposition, had taken the deposition of R. Burge, the husband of the deceased sister. This deposition was in chief, and taken for the reason that the witness was in bad health, and the parties regarded his testimony as important. The appellees withdrew his deposition and then offered to read that of Mrs. Moore, supposing that this would remove

all objections. We find no exception in the code on this subject so as to allow parties to testify, although the testimony taken may be withdrawn, or may have been taken from necessity. The object was to prevent parties from supplying omissions or defects in the testimony adduced by them by their own statements, so as to make out the cause of action or defense, and to permit the withdrawal of the testimony previously taken to enable the parties to testify would, in effect, nullify the salutary provision of the code. So the case must be determined in the absence of the testimony of both Mrs. Moore and R. Burge. The code makes no such exceptions as are urged, and this court has no right to add to its provisions.

If the testimony of the appellant stood uncontradicted there would be no doubt of her right to have the conveyance cancelled; but other facts appear in the record that are utterly irreconcilable with the statements made by the appellant. Judge Muir, who had advised the husband of Emma that the will of Mrs. Burge was a nullity, and he would have to perfect the title, was told by Moore during the appellant's visit to Louisville to prepare the conveyance. He wrote the deed, and the appellant and Mrs. Moore came to his office, and he then explained to the appellant that the will of her half-sister was void, and that she owned one-fifth of the house and lot in her own right; that while he had no apprehension of anything wrong, inasmuch as she was conveying her interest for no other consideration than to carry out the wishes of Mrs. Burge, he felt it his duty to explain to her fully the character of interest she had in the property; that he read the conveyance to her, or had it read by his clerk, and the same was again read by the clerk taking the acknowledgment. It was not only read to her twice, but this witness says he so explained the matter that she could not have misunderstood the nature of her interest, or the fact that the will was void. He had no doubt she comprehended fully the nature of the transaction, and in this he is corroborated by two or more who were present. There is but little doubt but that she was fully informed as to the extent of her interest in the property when she signed and acknowledged the deed. It seems that she had but the one conversation with Mrs. Moore in regard to the conveyance, and nothing had ever passed between herself and the husband of Mrs. Moore in regard to the property.

That the appellee was desirous of owning the property devised to her by her deceased sister, and that the will of the latter should be fully executed, is apparent from the proof in the record; and the appellant, desiring to gratify the wishes of the appellee, signed the conveyance, and doubtless felt after its execution that she had been too generous for one in her pecuniary condition, in consenting that her sister should take the house and lot.

In the case of Hoghton v. Hoghton, 11 Eng. L. and Eq. 134, the doctrine was announced, in relation to a transaction between the father and son, that in the absence of unequivocal proof that the whole of the facts were known to the son and the purposes of the deed fully explained to him, the contract or conveyance would not be supported.

In the cases of *Cooke v. Lamotte,* 21 Law J. (1852) 371, and *Gibson v. Jeyes,* 6 Ves. 266a, it is stated that where one person obtains by voluntary donation a large pecuniary benefit from another, the burden of proving the fairness of the transaction falls on the person taking the benefit. But this proof, Lord Eldon says, is given if it be shown that the donor knew and fully understood what it was that he was doing unless the disposition to do so was induced by undue influence.

No undue influence is shown to have been exercised over the appellant, and if she is entitled to cancel the deed it is by reason of the alleged fraud. The chancellor would be reluctant on such facts as appears in this case to believe that the appellee, for the mere purpose of acquiring this interest of one-fifth in the house and lot, had resorted to such fraudulent devices in order to induce the execution of the conveyance. There is some evidence conducing to show that the general condition of the mind of appellant was such as to preclude her from understanding fully her rights in the premises, but the weight of the testimony is against her, and in fact her answers to the various interrogatories propounded to her in this case evince not only an intelligent understanding of her own interests, but the existence of a more than ordinary intellect. While we think the appellant was in no condition pecuniarily to give her interest in this estate to those who were certainly not in need of it, still, giving to that fact its full weight, together with all the circumstances connected with the transaction, we cannot conclude that the appellee conceived the fraudulent purpose of acquiring the property in controversy, and

consummated it by obtaining the conveyance. The appellant was doubtless impressed with the idea that the wishes of her deceased half-sister should be carried out.

It is not unreasonable to suppose that the parties were all willing, if not anxious, that Mrs. Moore should have the property devised to her. The children of Mrs. Burge conveyed their interest to Mrs. Moore, but it is insisted that this was done in order that the will might stand, and to prevent Mrs. Moore from disregarding its provisions. This could not well be, as the property in controversy seems to have been the only real estate owned by the decedent, and her personal estate devised to her husband would have passed to him as the survivor, or as the personal representative.

Conceding the burden to have been on the appellee with the testimony of appellant alone in conflict with these others as to her information and knowledge of the transaction and her rights in the premises, we cannot adjudge the appellee guilty of the fraudulent conduct attributed to her in the execution of the conveyance. The court will not presume fraud or undue influence from the mere relation of these parties, and where there was a motive or reason for executing the conveyance, such as existed in this case, viz.: the execution of the purposes of the deceased sister, we are not disposed to adjudge that the burden was on the appellant, nor do we regard the decision of that question necessary in determining the issue raised here. If the appellant has been too generous in thus parting with her property, or if she signed the conveyance merely to gratify the wishes of her sister, the latter's sense of justice will no doubt manifest a generosity equal to that displayed by the appellant.

Judgment *affirmed*.

*Duke & Richards, for appellant.*

*Baker & Toney, William Lindsay, for appellee.*